COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



ALLEGHENY CASUALTY CO.
(AGENT ALBERTO J. DE LA CHICA,
JR. d/b/a. LA CHICA II BAIL
BONDS),

                            Appellant,

v.

THE STATE OF TEXAS,

                            Appellee.

§

§

§

§

§

No. 08-03-00226-CV

Appeal from the

168th Impact Court

of El Paso County, Texas

(TC#2002BF134)



O P I N I O N

           This is an appeal from the trial court’s entry of a final judgment finding a bond
forfeiture in which Appellee was granted final forfeiture of a bail bond of $1,500 against
Appellant. For the reasons stated herein, we affirm.
                         I. FACTUAL AND PROCEDURAL BACKGROUND 
           The substantive facts in this case are not disputed. The criminal defendant-principal
Jorge Rios Renteria, a citizen of Mexico, applied for admission to the United States on
February 24, 2002 as a non-immigrant visitor. At that time, he was found to be smuggling
approximately forty-six pounds of marijuana into the United States. He was paroled


 into the
United States for prosecution proceedings related to the smuggling. He was indicted by the
State of Texas on March 19, 2002 and charged with the felony of possession of marijuana
in the quantity of more than five pounds but less than fifty pounds. The principal, Jorge
Renteria, secured an appearance bond in the amount of $1,500 on March 1, 2002 with
Appellant as surety. The effect of the issuance of the bond is that the principal is authorized
by law to be released by the Sheriff. Because the principal in this case is a Mexican national
who had been paroled into the United States for a temporary purpose, the Immigration and
Naturalization Service (INS) had filed a detainer with the Sheriff which provided that upon 
release from incarceration, the individual would be released to the INS and taken to an INS
facility for holding until his return to Mexico. In conjunction with his parole into the United
States for the criminal prosecution, the Honorable Gary Burkholder, immigration judge,
issued an Order of Removal providing for removal from the United States to Mexico for the
reason that the immigration officer believed him to be a trafficker of controlled substances. 
The issuance of a bond triggered his release to INS and subsequent removal from the United
States.
           On May 8, 2002, the principal failed to appear at his hearing to answer the felony drug
possession charges pending against him. On May 13, 2002, the trial court issued a Judgment
Nisi. A hearing on the Judgment Nisi was held on March 6, 2003, the trial court received
evidence from both the Appellant and the Appellee and reviewed the exhibits and trial briefs
filed by both parties. On March 26, 2003, the trial court issued an order stating “[t]he case
will be held in abatement until April 9, 2003 at 5 pm to produce Mr. Renteria by use of
‘parol’ [sic] or other method.” A Final Order on Judgment Nisi was entered on April 16,
2003 finding that the bond of $1,500 should be forfeited. Appellant did not request findings
of fact or conclusions of law.
II. ISSUES PRESENTED
           In two issues for review, Appellant challenges the court’s granting of the bond
forfeiture claiming that a bail bond surety is not liable for a bail bond when the principal is
deported


 prior to the time that the principal is to appear in court. Appellant’s second issue
asserts that liability of a bonding company for a bond forfeiture is excused by a finding of
uncontrollable circumstances and that the fact of federal deportation is sufficient for a
finding of excuse under Texas Code of Criminal Procedure Article 22.13. We read these
issues as a challenge to the sufficiency of the evidence to support the trial court’s non-finding
of deportation of the principal as a defense to a bond forfeiture case as a matter of law. 
Similarly, we construe both issues as attacking the trial court’s non-finding of uncontrollable
circumstances as an affirmative defense to the bond forfeiture liability for the reason that the
principal had been deported as a matter of law.
III. STANDARD OF REVIEW
           A “no evidence” or legal insufficiency point is a question of law which challenges the
legal sufficiency of the evidence to support a particular fact finding. There are two separate
“no evidence” claims. When the party having the burden of proof suffers an unfavorable
finding,


 the point of error challenging the legal sufficiency of the evidence should be that
the fact or issue was established as “a matter of law.” When the party without the burden of
proof suffers an unfavorable finding, the challenge on appeal is one of “no evidence to
support the finding.” In re Estate of Livingston, 999 S.W.2d 874, 879 (Tex.App.--El Paso
1999, no pet.); see Creative Manufacturing, Inc. v. Unik, Inc., 726 S.W.2d 207, 210
(Tex.App.--Fort Worth 1987, writ ref’d n.r.e.).
           When attacking the legal sufficiency of the evidence to support an adverse finding on
an issue for which he had the burden of proof, i.e., challenging the trial court’s finding as a
matter of law, the appellant must demonstrate on appeal that the evidence conclusively
established all the vital facts in support of the issue. In re Estate of Livingston, 999 S.W.2d
at 879; Sterner v. Marathon Oil Company, 767 S.W.2d 686, 690 (Tex. 1989); Kratz v. Exxon
Corp., 890 S.W.2d 899, 902 (Tex.App.--El Paso 1994, no writ); Chandler v. Chandler, 842
S.W.2d 829, 832 (Tex.App.--El Paso 1992, writ denied). A party attempting to overcome
an adverse fact finding as a matter of law must surmount two hurdles. In re Estate of
Livingston, 999 S.W.2d at 879; Sterner, 767 S.W.2d at 690. First, the record must be
examined for evidence that supports the finding, while ignoring all evidence to the contrary.
In re Estate of Livingston, 999 S.W.2d at 879; Sterner, 767 S.W.2d at 690; Kratz, 890
S.W.2d at 902. Second, if there is no evidence to support the finding, then the entire record
must be examined to see if the contrary proposition is established as a matter of law. In re
Estate of Livingston, 999 S.W.2d at 879; Sterner, 767 S.W.2d at 690; Kratz, 890 S.W.2d at
902. Only if the contrary position is conclusively established will the point of error be
sustained. In re Estate of Livingston, 999 S.W.2d at 879-80; Kratz, 890 S.W.2d at 902; 
Chandler, 842 S.W.2d at 832.
           In reviewing a factual sufficiency point of error, the appeals court must weigh all of
the evidence in the record. Ortiz v. Jones, 917 S.W.2d 770, 772 (Tex. 1996). Findings of
fact may be overturned only if they are so against the great weight and preponderance of the
evidence as to be clearly wrong and unjust. Id. In that event, the appeals court must state
clearly why the finding is factually insufficient or so against the great weight and
preponderance as to be manifestly unjust. Id.
           An “insufficiency” point invokes a broader standard, requiring this Court to consider
all of the evidence and ascertain whether the evidence supporting the finding is so weak, or
the evidence to the contrary so overwhelming, that the finding should be set aside and a new
trial ordered. Garza v. Alviar, 395 S.W.2d 821, 823 (Tex. 1965).
           Legal and factual sufficiency of the evidence standards of review govern appeals of
nonjury trials on the merits. IKB Industries (Nigeria) Ltd. v. Pro-Line Corp., 938 S.W.2d
440, 445 (Tex. 1997); Chrysler Corp. v. Blackmon, 841 S.W.2d 844, 852 (Tex. 1992); Hall,
Standards of Appellate Review in Civil Appeals, 21 St. Mary’s L.j. 865, 919-20 (1990).
When a party appeals from a nonjury trial, it must complain of specific findings and
conclusions of the trial court, because a general complaint against the trial court’s judgment
does not present a justiciable question. Fiduciary Mortgage Co. v. City Nat’l Bank, 762
S.W.2d 196, 204 (Tex.App.--Dallas 1988, writ denied). Accordingly, findings of fact and
conclusions of law are mandatory for a party to file to avoid the onerous presumptions that
apply in an appeal from a nonjury trial. When an appellant does not request or file findings
and conclusions by the trial court, the appellate court presumes the trial court found all fact
questions in support of its judgment, and the reviewing court must affirm that judgment on
any legal theory finding support in the pleadings and evidence. Point Lookout West, Inc. v.
Whorton, 742 S.W.2d 277, 278 (Tex. 1987).
           If the appellant does not challenge the trial court’s findings of fact, when filed, these
facts are binding upon both the party and the appellate court. Wade v. Anderson, 602 S.W.2d
347, 349 (Tex.Civ.App.--Beaumont 1980, writ ref’d n.r.e.). Accordingly, it is incumbent for
the appellant to attack the findings by appropriate legal and factual sufficiency points of
error. Lovejoy v. Lillie, 569 S.W.2d 501, 504 (Tex.Civ.App.--Tyler 1978, writ ref’d n.r.e.). 
In an appeal of a nonjury trial, findings are specifically and meaningfully tied to appropriate
standards of appellate review and are therefore truly beneficial to appellate review. See
Blackmon, 841 S.W.2d at 853.
           It would have been helpful for the court to have articulated its findings of facts and
conclusions of law but because no findings of fact or conclusions of law were requested or
filed in this case, we will presume that the trial court found all necessary facts to support the
judgment.
IV. DISCUSSION
           After the principal on the bond failed to appear, the State initiated the proceedings to
forfeit the bail bond that had been posted in this case. The evidence is undisputed that the
principal failed to appear at the required time and has not appeared to answer the felony
possession of marijuana charges pending against him. The question raised by Appellant is
merely whether the fact of deportation of an alien from the United States automatically
triggers a defense to the obligation imposed by the writing of the bond and whether the fact
of deportation is an uncontrollable circumstance that excuses nonappearance at a court
proceeding.
           In Castaneda v. State,


 the Court of Criminal Appeals addressed the issue of the
liability of a bonding company under Texas Code of Criminal Procedure Article 17.16 and
outlines the procedure that is necessary for a bonding company to raise a defense to liability
on the bond. Castaneda involved a contention on the part of the bonding company that it
was excused from liability under the bond in five cases where individuals had been released
to the custody of INS. Significantly, in three of the five cases, the bonding company had
complied with the statute and provided proof in the form of verification from the sheriff that
the individuals were in the custody of the federal agency. The Castaneda court held that
such proof was sufficient to meet the requirements of the statute and the bonding company
was excused under those circumstances. The fourth case involved a technical release of the
surety on other grounds not relevant to our case. The fifth case was factually distinguishable
because the bonding company did not submit proof of compliance with the statute in the form
of the verification of incarceration from the sheriff and the surety was not released. See
generally Castaneda v. State, 138 S.W.3d 304 (Tex.Crim.App. 2003). The Court of Criminal
Appeals notes that the statutory provision does not provide for “absolving liability where a
principal is deported from the United States but is not shown to be in the custody of the
foreign jurisdiction, . . .” id. at 309, but does not reach the merits on the question of
deportation as a defense because of the lack of evidence of the fact of deportation in the
Castaneda record. Id. Significantly, the Court of Criminal Appeals does not discuss the
option of “parole” available to deported aliens who wish to return.
           Interestingly, the fact situation presented in the case before us appears to mirror the
factual scenario contemplated by the Castaneda dissent. The Castaneda dissent describes
an opportunity for nefarious drug dealers to take advantage of the release provision provided
by the bond, allowing the drug “mules” to avoid prosecution and return to Mexico with
virtually no consequences other than a small inconvenience and slight disruption to the drug
trafficker’s supply train. See Castaneda, 138 S.W.3d at 314. In Castaneda, the court
described a scenario which fits our situation almost exactly. Mr. Renteria, carrying less than
fifty pounds of marijuana, presented himself for entry to the United States as a tourist. When
caught smuggling the drugs, and because the amount in question did not appear to be
significant enough to warrant federal prosecution, he was turned over to the State for
prosecution of the felony under state law. The Federal government’s interest in him was
limited to the immigration violation which triggered the immigration hold. Because the
felony charge resulted in a relatively small bond, with a correspondingly smaller bonding fee,
Mr. Renteria was able to obtain the services of a bonding company who was willing to write
a bond for an individual who listed only a minimal address in Juarez, Mexico for purposes
of identification. The result was that the bond triggered Mr. Renteria’s release to INS which
then transferred him to the border where he has disappeared into Mexico. Now Appellant
would like this Court to excuse it from its minimal obligation under the bond entirely,
allowing it to make a tidy profit on a scheme which is obvious to all but the most naive.
           Appellant has asserted that the mere fact of the deportation of the principal triggers
a judicial excuse to their obligation under the bond because of Texas Code of Criminal
Procedure Article 17.16. We strongly disagree and look to the Court of Criminal Appeals’
opinion in Castaneda for guidance.
            The surrender of a surety bond is covered by Article 17.16 of the Code of Criminal
Procedure


 which states;
           Discharge of liability; surrender or incarceration of principal before forfeiture 
 
(a) A surety may before forfeiture relieve himself of his undertaking by: 
 
(1) surrendering the accused into the custody of the sheriff of the county
where the prosecution is pending; or 
 
(2) delivering to the sheriff of the county where the prosecution is
pending an affidavit stating that the accused is incarcerated in federal custody,
in the custody of any state, or in any county of this state. 
 
(b) For the purposes of Subsection (a)(2) of this article, the bond is discharged
and the surety is absolved of liability on the bond on the sheriff's verification
of the incarceration of the accused.

In addressing a factually similar situation, the Castaneda court interpreted the requirements
established by Article 17.16. By its plain language, Article 17.16 releases a surety from
liability on a bond when verification of the principal’s incarceration in another jurisdiction
is requested and the sheriff is able to verify that incarceration. When incarceration in the
receiving jurisdiction is verified, the surety is automatically released from liability; neither
further action by the surety nor approval by a court is required. There is no requirement that
the surety notify the trial court, or anyone else, that the bond has been surrendered or to
request that a detainer or arrest warrant be entered so that the principal is subject to return
to the sending jurisdiction. Castaneda, 138 S.W.3d at 308.
           In Castaneda, as in our case, the other jurisdiction was federal. In the Castaneda
cases, the court noted that the bonding company was hired to post bond so that the principals
would be transferred to federal custody. After the bonds were posted and his principals
transferred into INS custody, the bonding company filed, for three of the principals, the
forms requesting verification by the Hidalgo County sheriff. In these three cases, the sheriff
verified that the principal was in INS custody and provided a verification form. In these
three cases, the bonding company then filed an Affidavit of Bondsman for Surrender of
Principal, with the verification form attached, and requested the trial judge to issue a warrant
for the arrest of the principal. Such requests are not required to release the surety from
liability under the plain language of Article 17.16, but appear to have been a courtesy
notification to the trial court that the principal was no longer in the custody of Hidalgo
County. In each case, however, the trial court refused to issue the warrant. Id.
           In due course, each case was called for trial, and in each case, the principal failed to
appear. Even though, by operation of law, the bonding company had been released from
liability on the three bonds, the State requested, and the trial court granted, a judgment nisi
against the bonding company and each principal. The Castaneda court held that because the
bonding company’s liability on those three bonds had been exonerated “on the sheriff's
verification of the incarceration of the accused,” the trial court was without authority to find
the bonding company liable for those bonds. Castaneda, 138 S.W.3d at 308.
           Our case, though similar, is factually distinguishable on two significant grounds. 
First, the Appellant did not show that the principal was incarcerated in another jurisdiction
and did not have the sheriff’s verification of such incarceration triggering the automatic
release from liability under the statute. In fact, there is no evidence in the appellate record
that Mr. Renteria, though in the custody of the INS for a short time, was in the custody of any
jurisdiction at the time for appearance in the Texas state courts. Further, Appellant did not
present an affidavit of bondsman for surrender of the principal which would have triggered
the requirement for verification by the sheriff under Article 17.16. Clearly the statute
contemplates excusing a bondsman from liability on the bond when an individual is securely
confined in another jurisdiction. It intends to relieve the bondsman of any responsibility for
the principal’s location or required appearance to answer pending charges only upon
verification of the incarceration by the sheriff. It should not, however, be construed as
allowing a bonding company to become a participant in a game of cat and mouse where the
State is the loser. In sum, Appellant did not show that Mr. Renteria was securely in the
custody of any other jurisdiction nor did Appellant comply with the minimal statutory
requirements outlined by Article 17.16 to trigger a verification by the sheriff. Because there
is no evidence of compliance with the statue, we overrule Appellant’s Issue No. One and
hold that the mere deportation of an individual without more is not sufficient to trigger a
release from liability on the part of a bondsman under Texas Code of Criminal Procedure
Article 17.16 as a matter of law.
           Appellant has also urged that the deportation of the principal in this case is an
uncontrollable circumstance which prevented the appearance of the principal and should
result in a mandatory release of liability under Texas Code of Criminal Procedure Article
22.13.
           Castaneda is also helpful in reviewing this issue by holding that the principal must
appear before final judgment on the bond to answer the accusation against him or show
sufficient cause for not so appearing. In Castaneda, the surety was held liable on the bond
for failing to show the circumstances which justified the defense of “uncontrollable
circumstance” before the final judgment on the bond was entered because the bondsman had
not proved that the principal was in fact deported to Mexico. In our case, it is clear from the
record that the principal was returned to Mexico, Appellant urges that the mere fact of the
principal’s departure from the United States is sufficient to show as a matter of law that the
bonding company is excused from liability on the bond by reason of “uncontrollable
circumstance” as contemplated by Article 22.13. See Castaneda, 138 S.W.3d at 310. We
hold that it does not.
           The plain language of Article 22.13 provides for exoneration for responsibility for the
bond under limited circumstances. Article 22.13 provides for exoneration if “uncontrollable
circumstance” prevented the principal’s appearance and it is shown that the principal’s
failure to appear arose through “no fault on his part.” Tex. Code Crim. Proc. Ann. art.
22.13(a)3 (Vernon Supp. 2004-05).
           Cases that have addressed the issue of “uncontrollable circumstance” appear to
consider the “fault” of the principal as having a significant bearing on the ultimate
determination of whether the “uncontrollable circumstance” truly excused the principal’s
failure to appear. See, e.g., Hill v. State, 955 S.W.2d 96, 99-100 (Tex.Crim.App. 1997). 
None of the cases that have reviewed this issue before, contemplated the unique factual twist
presented by the evidence in this case which included the option of temporary parole being
available to a defendant-principal to allow the individual to return to the United States for
the purpose of answering the pending criminal charges against him or her.
           The trial court was presented with the deposition testimony of Ronald Marcell, a
senior immigration inspector with the Immigration and Naturalization Service in El Paso,
Texas. Mr. Marcell provided detailed testimony about the option of parole, and appropriate
procedure to be followed by an individual who has the desire to return to the United States
to answer criminal charges pending against him or her. Further, Appellant’s representative, 
Mr. Alberto J. De La Chica, Jr. testified that he was familiar with and had, in fact,
participated in circumstances whereby individuals from Mexico returned to the United States
and were paroled into this country for the limited purpose of appearing at a court proceeding. 
Mr. De La Chica confirmed that he personally had assisted individuals by meeting
individuals at the bridge and facilitating the individual’s request for parole.
           The evidence also established that in the event parole was denied, the denial may be
appealed for further review. Mr. Marcell also testified that his records did not reflect a
request for parole by Mr. Renteria ever occurred nor did Appellant contend that Mr. Renteria
had presented himself to INS and been denied parole. Rather, what occurred in this case is
precisely the type of machinations contemplated by the Castaneda dissent.
           We note that federal law provides for parole of individuals into the United States for
purposes of appearing at court proceedings


. Because there is no evidence to reflect that Mr.
Renteria attempted to present himself for parole and avail himself of the opportunity to return
and answer the charges against him, we hold that Appellant has not shown uncontrollable
circumstances to justify exoneration from liability on the bond as a matter of law. We also
note that the burden to justify exoneration from liability on a bond should be high and is on
Appellant in order to discourage the outrageous consequences of creating a virtual swinging
door to allow drug dealers a rapid return to Mexico with essentially no consequences and no
corresponding deterrent effect or compulsion to insure the principal’s appearance to answer
pending charges. The bonding companies should have some incentive to insure that there
is a meaningful intention to produce an alien defendant for appearance at court proceedings
after a bond has been approved.
           The Court of Criminal Appeals in Hill discussed the exoneration of responsibility
contemplated by “uncontrollable circumstance” of Article 22.13 and the contributing impact
of the principal’s actions in determining “fault.” Clearly, the court contemplates that the
principal’s conduct is a significant factor and cannot be disregarded when analyzing the
situation nor should the statute be liberally interpreted to encourage excusing the principal
upon a failure to appear. See generally Hill v. State, 955 S.W.2d 96 (Tex.Crim.App. 1997). 
 The principal and the bonding company both have a responsibility to insure that the principal
appears to answer the charges pending against the principal. When the principal does not
appear, the “uncontrollable circumstance” truly should be “uncontrollable,” and there should
be no fault on the part of the principal. Here, the fact of parole as an available alternative
negates any argument of lack of fault on the principal particularly where there is no showing
that the principal attempted to avail himself of the opportunity. We therefore overrule
Appellant’s Issue No. Two in its entirety.
           Having overruled each of Appellant’s issues on review, we affirm the judgment of the
trial court.
 
                                                                  RICHARD BARAJAS, Chief Justice
April 7, 2005

Before Panel No. 4
Barajas, C.J., Larsen, and McClure, JJ.
Larsen, J., not participating