

# NUMBER 13-23-00043-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

## IN THE ESTATE OF DORIS FAYE WRIGHT, DECEASED

## ON APPEAL FROM THE COUNTY COURT AT LAW
## OF KLEBERG COUNTY, TEXAS

## MEMORANDUM OPINION

**Before Justices Longoria, Tijerina, and Peña**
**Memorandum Opinion by Justice Longoria**

In this probate case, appellant Demry Martin Wright appeals from the trial court's order finding that Doris Faye Wright died intestate. In six issues, which we consolidate as one, Demry challenges the trial court's order as an abuse of discretion. We reverse and remand.

# I.      Background[1]

Doris passed away on September 21, 2021, and was survived by her four sons, Demry, Mathew Wright, Patrick Wright, and Thomas Wright. Demry filed an application for probate of will and issuance of letters testamentary on October 25, 2021, in the Kleberg County Court. In his application, Demry alleged that on May 7, 2007, Doris executed a holographic will (2007 will) which had not been revoked. On November 29, 2021, Thomas filed a "Motion to Transfer to County Court at Law." On November 30, 2021, the Kleberg County Court granted Thomas's motion to transfer, and the case was transferred to the Kleberg County Court at Law (trial court).

On July 7, 2022, Thomas filed an amended counter-application for probate of will in which he alleged that on July 20, 1993, Doris executed a will (1993 will) which had not been revoked. In his counter-application, Thomas argued that the 2007 will that was "filed with the Court by Demry," to the extent it was a valid holographic testamentary instrument,

> (1) [did] not purport to revoke the [1993 will] or any prior [w]ills, and could only be construed as a Codicil to the Will submitted herewith, (2) appear[ed] to be written on more than one occasion; (3) contain[ed] two separate dates[;] (4) contain[ed] a curving line over portions of its terms, which line is undated and unsigned; [](5) require[d] clarification as to the terms of the handwritten document itself, and more specifically the terms of the trust mentioned therein including the identity of its corpus, beneficiaries, and trustee(s); (6) was revoked by [Doris] in whole or in part because it indicates that it is "not right" [and] indicates the Decedent "will write new one[.]"

---

[1] We limit our recitation of this case's background to that which is necessary to resolve the issues presented on appeal. *See* TEX. R. APP. P. 47.1 ("The court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal.").

In the alternative, Thomas requested the trial court to enter an order declaring heirship and appointing an administrator of Doris's estate in the event the trial court found that Doris died intestate. *See* TEX. EST CODE ANN. § 256.101(a).

On August 1, 2022, Demry and Patrick filed a joint original answer generally denying the allegations in Thomas's amended counter-application and asserted that the 2007 will was not a codicil to the 1993 will and, in fact, revoked the 1993 will. The response also requested a declaration of heirship in the event the trial court determined that Doris died intestate.

The trial court held two hearings regarding Demry and Thomas's competing applications for probate on December 7, 2022 and January 7, 2023. At the hearings, the trial court heard testimony from Demry, Thomas, Patrick, and Matthew. In addition, the trial court admitted several documents into evidence without objection, including the 1993 will and a notebook containing the 2007 will. Demry testified that Doris's husband passed away on May 6, 2006, almost a year before Doris created the 2007 will. Demry explained that after Doris died, he found the 2007 will inside a lockbox in her bedroom. According to Demry, the lockbox contained various legal documents.

Under the 1993 will, Doris's estate was to be distributed equally amongst her four sons. In contrast, the 2007 will significantly departed from the terms of the 1993 will. For example, under the 2007 will, Doris's "home in Kingsville, and other property" was to be distributed equally amongst Demry, Matthew, and Patrick. Acreage in Goliad was to be held in trust by Demry, Matthew, and Patrick, with Demry as trustee. Demry was also to

3

receive the "ranch" and the Goliad land "in return for his care of land and my cows." The 2007 will also contained a provision gifting Thomas acreage in Fannin and $10,000. However, a line was struck through the words within this provision as follows:



On the second to last page of the 2007 will, Doris expressed her desire for her family to continue to enjoy the "land at the ranch." On the last page of the 2007 will, Doris wrote "I do realize that at some time in future the land will have to be sold or divided," and provided her signature under that statement. Underneath this signature, Doris wrote "Not right," and provided another signature underneath those words. Underneath this second signature, Doris wrote "Jan. 16, 2014." Underneath this date followed a scribbly line which led to the words, "Will write new one[.]"

4



Demry testified that he did not know when Doris marked out the provision for Thomas in the 2007 will but stated he believed that in 2007, Doris wanted Thomas to get the Fannin property and had not written him off the will. Demry explained that Doris had filed a partition suit to sell the Fannin property in December 18, 2013, which was a short period before the January 6, 2014 date written in the 2007 will.[2] Demry also testified that Doris had successfully sold the Fannin property for $286,000.[3] In reference to the "Not

---

[2] A copy of the petition for partition filed by Doris on December 18, 2013 in the 267th District Court of Goliad County, trial court cause number 13-23-0103-CV, was admitted into evidence.

[3] A copy of a "Report of Sale" filed on January 21, 2015 in the 267th District Court of Goliad County, trial court cause number 13-23-0103-CV, was admitted into evidence. This filing indicates that Doris sold the property at issue in the partition suit for $282,268.00.

5

right" and "Will write new one" language in the 2007 will, Demry stated that he was not aware that Doris had ever written a new will.

Thomas testified that as far as he knew, all the Fannin property had been sold or transferred. Thomas explained that he believed Doris treated him differently in the 2007 will because of tension between him and his brothers. Thomas acknowledged the partition suit and stated that the language "Not right" and "Will write new one" reflected Doris's intent to revoke the 2007 will. Thomas also testified that Doris had started a new will, that Demry and Patrick were part of it, but he did not think he was. Thomas also stated that Doris did not actually complete a new will and indicated that she had written some notes in the final pages of the notebook containing the 2007 will but did not sign it.[4]

During Matthew's testimony, he was asked, "When [Doris] wrote the words 'not right' on that document, do you believe that she wanted her children to carry out its terms after she passed away?"; Matthew responded, "I would believe so." Later, the trial court asked Matthew, "Tie in 'not right' with I'll 'write a new one.' What does that intent tell you right there?" Matthew responded, "That intent tells me she didn't agree with what she wrote. And then she put the squiggly line down to it and said she was going to rewrite it, that she was going to write another one." When asked specifically if Doris meant she wanted the 2007 will to be followed by the "Will write new one" language, Matthew responded, "No, she didn't." Matthew later stated that Doris did not intend the 2007 Will "to be the correct document, from what I'm reading, because she said she will rewrite it."

---

[4] The final pages of the notebook referenced were not admitted as evidence in the record.

6

After the parties presented evidence, testimony, and closing statements, the trial court orally pronounced its ruling that Doris died intestate. The trial court pronounced that the 2007 will was not a codicil but a new will that revoked the 1993 will. The trial court then pronounced that it found Matthew's testimony to be credible and stated that Matthew was "testifying against his own interest" and "by his testimony, he loses some of the stuff that he's going to get." The trial court then stated that the 2007 will itself was revoked on January 16, 2014 "by looking at the 'not right' and 'will write a new one'" language, and concluded that Doris died intestate.

On January 19, 2023, the trial court signed and entered its "Order Denying Admittance of Decedent's 2007 Holographic Will and 1993 Last Will and Testament to Probate." In its order, the trial court found, among other things, that

> [Doris's] 2007 Holographic Will complies with the holographic will statu[t]es and is a valid Will and that the 2007 Holographic Will revoked the [1993 Will] which was purported to be [Doris's] Last Will and Testament and that [Doris's] May 1, 2007 Holographic Will was revoked by the January 16, 2014[] notations made and signed by [Doris] after her signature of the May 1, 2007 Holographic Will.

The trial court further ordered that Doris died intestate. This appeal ensued.

## II. PROBATE APPLICATION

In his sole issue, Demry challenges the trial court's denial of his probate application. Specifically, Demry challenges the trial court's finding that "the 2007 Holographic Will was revoked by some 'notations' on it, and that as a result of such revocation, [Doris] died intestate."[5]

---

[5] We note that in his brief, Demry specially states that he does not dispute "the propriety of" the

7

**A.      Standard of Review & Applicable Law**

"A trial court's ruling on a probate application is generally reviewed under an abuse-of-discretion standard." *In re Est. of Gaines*, 262 S.W.3d 50, 55 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (cleaned up). The trial court abuses its discretion if it acts in an arbitrary or unreasonable manner without reference to any guiding rules or principles. *Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex. 2004). "The mere fact a trial judge may decide a matter within his discretionary authority in a different manner than an appellate judge in a similar circumstance does not demonstrate that an abuse of discretion has occurred." *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 242 (Tex. 1985). Moreover, an abuse of discretion does not occur where the trial court bases its decisions on conflicting evidence. *In re Barber*, 982 S.W.2d 364, 366 (Tex. 1998) (orig.proceeding).

When our review is for abuse of discretion, findings of fact and conclusions of law help us review the propriety of the trial court's ruling by providing us with an explanation for the ruling. *See In re J.P.C.*, 261 S.W.3d 334, 336–37 (Tex. App.—Fort Worth 2008, no pet.). In a trial to the court, where no findings of fact or conclusions of law are filed, the judgment of the court implies all necessary findings of fact to support it. *Gibson v. Ellis*, 126 S.W.3d 324, 335 (Tex. App.—Dallas 2004, no pet.). Where the implied findings of fact are supported by the evidence, it is our duty to uphold the judgment on any theory of law applicable to the case. *Id.*

---

2007 will's validity, nor does he dispute that the 2007 will "revoked the prior attested Will dated 1993."

A specific statutory provision governs the procedure a trial court must follow when, as here, a second application for the probate of a will of the same decedent is filed at a time when an original application has not been heard. *See* TEX. EST. CODE ANN. § 256.101(a). Section 256.101(a) provides in relevant part:

> If, after an application for the probate of a decedent's will or the appointment of a personal representative for the decedent's estate has been filed but before the application is heard, an application is filed for the probate of a will of the same decedent that has not previously been presented for probate, the court shall: (1) hear both applications together; and (2) determine: (A) if both applications are for the probate of a will, which will should be admitted to probate, if either, or whether the decedent died intestate[.]

*Id.*

To admit a will to probate, a trial court must find that it is valid. *In re Est. of Livingston*, 999 S.W.2d 874, 876 (Tex. App.—El Paso 1999, no pet.); *see also In re Est. of Arrington*, 365 S.W.3d 463, 466 (Tex. App.—Houston [1st Dist.] 2012, no pet.). To be admitted to probate, a will must comply with the statutory provisions governing the formalities to be observed during a will execution. *See Brown v. Traylor*, 210 S.W.3d 648, 684 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (holding that the proponent for the admission of a will to probate must establish that "the testator executed the will with the formalities and solemnities and under the circumstances required by law to make it a valid will"). A will not executed in accordance with the prescribed statutory requirements is of no force or effect. *In re Est. of Hutchins*, 829 S.W.2d 295, 299 (Tex. App.—Corpus Christi–Edinburg 1992, writ denied); *Belgarde v. Carter*, 146 S.W. 964, 965 (Tex. Civ. App.—San Antonio 1912, writ ref'd).

9

All wills must be signed by the testator or by another person on the testator's behalf, though a will written wholly in the testator's handwriting (a holographic will) need not be attested by subscribing witnesses. *See* TEX. EST. CODE ANN. §§ 251.051–.052. The signature may be informal and its location is of secondary importance if the maker intended the written name or mark to constitute a signature expressing approval of the instrument as the maker's will. *Id.* § 251.051(2)(A); *Jones v. Jones*, 649 S.W.3d 577, 584–85 (Tex. App.—Houston [1st Dist.] 2022, no pet.).

Furthermore, § 253.002 expressly provides the requirements for revoking a written will or a clause or a devise in a written will:

> A written will, or a clause or devise in a written will, may not be revoked, except by a subsequent will, codicil, or declaration in writing that is executed with like formalities, or by the testator destroying or canceling the same, or causing it to be destroyed or canceled in the testator's presence.

TEX. EST. CODE ANN. § 253.002. This statute is the exclusive method for revoking a will and a testator's intent to destroy or revoke a will, standing alone, "cannot abrogate the clear wording of the statute." *Morris v. Morris*, 642 S.W.2d 448, 449–50 (Tex. 1982) (interpreting former § 63 of the Probate Code, predecessor to § 253.002 of the Estates Code).

"In construing a will, the court's focus is on the testat[or's] intent." *San Antonio Area Foundation v. Lang*, 35 S.W.3d 636, 639 (Tex. 2000) (citing *Huffman v. Huffman*, 161 Tex. 267, 339 S.W.2d 885, 888 (1960)). "This intent must be ascertained from the language found within the four corners of the will." *Id.* (citing *Shriner's Hosp. for Crippled Child. of Tex. v. Stahl*, 610 S.W.2d 147, 151 (Tex. 1980)). Courts should not focus on

10

"what the testat[or] intended to write, but the meaning of the words she actually used." *Stahl*, 610 S.W.2d at 151*; Rekdahl v. Long*, 417 S.W.2d 387, 389 (Tex. 1967); *Kirk v. Beard*, 162 Tex. 144, 345 S.W.2d 267, 273 (1961). "In this light, courts must not redraft wills to vary or add provisions 'under the guise of construction of the language of the will' to reach a presumed intent." *Lang*, 35 S.W.3d at 639 (quoting *Stahl*, 610 S.W.2d at 151); *see also Welch v. Straach*, 531 S.W.2d 319, 322 (Tex. 1975); *Huffman*, 339 S.W.2d at 888.

"Determining a testat[or's] intent from the four corners of a will requires a careful examination of the words used." *Lang*, 35 S.W.3d at 639. "If the will is unambiguous, a court should not go beyond specific terms in search of the testat[or's] intent." *Id.* (citing *Frost Nat'l Bank v. Newton*, 554 S.W.2d 149, 154 (Tex. 1977)). If, on the other hand, the meaning of the instrument is uncertain or "reasonably susceptible to more than one meaning," the instrument is ambiguous and extrinsic evidence should be considered to ascertain the testator's intent. *See Davis v. Shanks*, 898 S.W.2d 285, 286 (Tex. 1995). "A court must construe a will as a matter of law if it has a clear meaning." *Knopf v. Gray*, 545 S.W.3d 542, 545 (Tex. 2018). "Whether a will is ambiguous is a question of law for the court." *Id*.

Generally, a construction which would render the decedent intestate as to any part of their estate is not favored. *See McGill v. Johnson*, 799 S.W.2d 673, 676 (Tex. 1990). "The fact that [a testator] left a will implies that [she] did not intend to die intestate." *Ferguson v. Ferguson*, 45 S.W.2d 1096, 1097 (Tex. 1931).

11

**B.    Discussion**

As mentioned above, the trial court's order concluded that "[Doris's] May 1, 2007 Holographic Will was revoked by the January 16, 2014[] notations made and signed by [Doris] after her signature of the May 1, 2007 Holographic Will." The order further concluded that Doris died intestate. In this case, the central dispute between the parties is whether Doris revoked the 2007 will with the language "Not right" and "Will write new one." *See* TEX. EST. CODE ANN. § 253.002.

Demry argues, among other things, that the language at issue is "patently not revocatory in nature" and "do[es] not rise to language upon which revocatory intent can be legitimately appended." Neither of the parties have provided any case authorities holding the language at issue, or similar language, constitutes revocatory intent, and we have found none. Both parties cite to *Dean v. Garcia*, which concluded that the words "CANCILED [sic]" and "VOID" were "words of cancellation" sufficient to revoke a codicil. 795 S.W.2d 763, 764–66 (Tex. App.—Austin 1989, writ denied). Thomas argues that *Dean* is "illustrative of how few words are necessary to revoke a testamentary instrument." However, Demry argues that the language at issue "does not come remotely close to the language in *Dean*" and does not consitute "present and clear revocative language." We agree that the language "Not right" and "Will write new one" are not clear "words of cancellation" sufficient to revoke the 2007 will. *See id.*

Demry further agues that the language "Will write new one" refers to "an intent to undertake an act in the future . . . and therefore do[es] not comply with the legal

12

requirement that revocatory language must constitute a present intent to revoke." "A present intent to change or revoke a testamentary instrument in the future cannot accomplish revocation of the instrument, nor is it evidence of the revocation." *Powell v. Powell*, 554 S.W.2d 850, 856 (Tex. App.—Tyler 1977, writ ref'd n.r.e.). Here, the language "Will write new one" cannot be reasonably interpreted to constitute a present intent to revoke the 2007 will. *See id.* A liberal reading of the language, at most, suggests an intent to create a new will in the future, not an intent to revoke the current will wherein this language appears; therefore, we conclude that the "Will write new one" language did not accomplish the 2007 will's revocation nor is it evidence of its revocation. *See id.*; *see also Trim v. Daniels*, 862 S.W.2d 8, 10 (Tex. App.—Houston [1st Dist.] 1992, writ denied) ("A holographic will should be liberally construed to effect the testator's intent.").

Thomas argues that the trial court properly considered extrinsic evidence to determine that Doris intended to revoke the 2007 will through the use of the disputed language. In order for consideration of extrinsic evidence to be proper, the trial court must have first found that the disputed language was ambiguous. *See Shanks*, 898 S.W.2d at 286. Nothing in the trial court's order indicates that it found the disputed language to be ambiguous, and no findings of facts or conclusions of law were requested by the parties or issued by the trial court. Even if the trial court impliedly found the disputed language to be ambiguous, whether a will is ambiguous is a question of law. *Knopf*, 545 S.W.3d at 545. Questions of law are reviewed de novo, and no deference is accorded to the trial

court's decision. *See In re Estate of Slaugther*, 305 S.W.3d 804, 808 (Tex. App.—Texarkana, 2010 no pet.).

When a will contains an ambiguity, that ambiguity may be classified as latent or patent. *In re Estate of Brown*, 922 S.W.2d 605, 608–09 (Tex. App.—Texarkana 1996, no writ). A patent ambiguity is one apparent on the face of the will, and arises on the reading of the will from the words themselves. *Id.* at 608. A latent ambiguity exists when the will appears to convey a sensible meaning on its face but cannot be carried out without further clarification. *Id.* at 608–09. As explained above, the disputed language does not constitute clear "words of cancellation" or contain a present intent to revoke the will; thus, we find no patent ambiguity. *See Dean*, 795 S.W.2d at 764–66; *Powell*, 554 S.W.2d at 856. Similarly, we find no latent ambiguity because the words do not sensibly convey a present intent to revoke the will. *See Powell*, 554 S.W.2d at 856; *see also Lang*, 35 S.W.3d at 639 ("Th[e testator's] intent must be ascertained from the language found within the four corners of the will."); *Stahl*, 610 S.W.2d at 151 ("The question is not what the testat[or] intended to write, but the meaning of the words she actually used."). Therefore, the trial court erred to the extent it found the disputed language ambiguous as a matter of law and when it considered extrinsic evidence to determine the meaning of the disputed language.

Based on the foregoing, we hold that the trial court abused its discretion when it concluded that the disputed language revoked the 2007 will. *See* TEX. EST. CODE ANN. § 253.002; *see also In re Est. of Gaines*, 262 S.W.3d at 55. As shown above, the trial court's order was arbitrary because it was made without reference to any guiding rules or

14

principles. *See In re Est. of Gaines*, 262 S.W.3d at 55; *Cire*, 134 S.W.3d at 838–39; see also *Ferguson*, 45 S.W.2d at 1097 ("The fact that [a testator] left a will implies that [she] did not intend to die intestate."); *McGill*, 799 S.W.2d at 676 ("Under Texas law, several presumptions guide the interpretation of wills. A construction which would render the decedent intestate as to any part of his estate is not favored."). Accordingly, we sustain Demry's sole issue.[6]

### III.   CONCLUSION

We reverse the trial court's order finding that Doris died intestate and remand the case for further proceedings.

NORA L. LONGORIA
Justice

Delivered and filed on the
21st day of November, 2024.

---

[6] Having sustained Demry's sole issue, we do not reach Demry's other arguments as they are not dispositive to our resolution of the appeal. *See* TEX. R. APP. P. 47.1.

15