**Ron HILL, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 897–96.

Court of Criminal Appeals of Texas, En Banc.

Oct. 1, 1997.

Ronald H. Moody, Waco, for appellant.

Alan Bennett, Asst. Dist. Atty., Waco, Matthew Paul, State's Atty., Austin, for State.

Before the court en banc.

## OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

MEYERS, Judge.

This case involves a bail bond forfeiture. Raunel Granados Vences was released on bond, and failed to appear for his felony trial on October 14, 1994. The trial court rendered judgment nisi. Ron Hill, Vences' surety, filed an answer asserting exoneration under TEX.CODE CRIM. PRO. ANN. article 22.13. The State moved for summary judgment, asking the court to take judicial notice of the criminal proceeding. The State offered no other summary judgment proof in support of the motion. Hill filed affidavits opposing the

1. Vences is not a party to the appeal.

motion. The affidavits stated that Vences had been in prison in Piedras Negras, Mexico, since October 4, 1994, and he was incarcerated there when he was supposed to appear for his trial in McLennan County on October 14th. The trial court granted the State's motion for summary judgment and entered a judgment in favor of the State and against Hill for $40,000 plus costs. Hill appealed.[1]

On appeal, Hill claimed the trial court erred in entering summary judgment in favor of the State, arguing that the evidence of Vences' incarceration in a Mexican prison exonerated Hill from liability on the forfeiture as an "uncontrollable circumstance" under Art. 22.13. Article 22.13 provides in part that "the following causes ... will exonerate the defendant and his sureties, if any, from liability upon a forfeiture taken:"

> [S]ome uncontrollable circumstance which prevented [the] appearance [of the principal] at court, and it must, in every case, be shown that his failure to appear arose through no fault on his part.

The Court of Appeals concluded that an affidavit which recites that a defendant was incarcerated in another country raises a fact issue sufficient to preclude a summary judgment in a bond forfeiture case. *Hill v. State,* 920 S.W.2d 468, 472 (Tex.App.—Waco 1996). After indulging every reasonable inference in Hill's favor and resolving all doubts in his favor, the Court of Appeals held that Hill raised fact issues about the statutory defense of exoneration that would have excused Vences' failure to appear for trial, so that the trial court should not have granted the State's motion for summary judgment. *Id.* at 474.

We granted the State's petition for discretionary review on the following grounds:

> Whether incarceration in a foreign country is an "uncontrollable circumstance" under [Art. 22.13(3) ] in the same manner as incarceration in another state.

> Whether an affidavit establishing only that a principal was incarcerated in a foreign country at the time he failed to appear

raises a fact issue sufficient to preclude a summary judgment forfeiting the bond.

Addressing the preliminary question of whether incarceration in Mexico is "an uncontrollable circumstance" that prevented Vences from appearing, the Court of Appeals conducted an extensive review of the caselaw pertaining to incarceration in Texas and other states. Given that the cases from this Court are not altogether consistent, we take this opportunity to do the same.

There are several divergent lines of cases. In one case, this Court has said that a principal's incarceration in another state is not grounds for exoneration. *Williams v. State,* 130 Tex.Crim. 124, 92 S.W.2d 1036 (1936). In that case, the appellants sought exoneration of a forfeiture due to uncontrollable circumstances, alleging the principal was incarcerated in an Iowa penitentiary at the time of the forfeiture. We disagreed they were entitled to exoneration:

> it is obvious that if [the principal] was confined in the state penitentiary of the state of Iowa, it was his fault and his conduct that put him there, and he and his sureties could not be exonerated from liability by reason of his own act and conduct, which may have made it impossible for him to appear.

*Williams,* 92 S.W.2d at 1038. This case gives no indication as to how the principal came to be incarcerated in the other state.

By contrast, in a couple of other opinions, this Court has held that when a principal fails to appear due to his incarceration in another county or state, he is exonerated from forfeiting his bond because such incarceration is an uncontrollable circumstance and his appearance cannot be said to result from fault on his part. *Smith v. State,* 561 S.W.2d 501 (Tex.Crim.App.1978)(holding where principal confined in jail or penitentiary "by virtue of a commitment from the same court or another court in the state" at time of forfeiture, principal and sureties exonerated); *Sanders v. State,* 166 Tex.Crim. 255, 312 S.W.2d 660 (1958)(stating "well-settled" rule that "where the principle is confined in jail or the penitentiary by virtue of a commitment from the same court or another court in the State at the time his bond is forfeited, such

confinement exonerates both the principle and his sureties," citing *Woods* ); *Woods v. State,* 51 Tex.Crim. 595, 103 S.W. 895 (1907). In *Woods* we explained,

> It may be that appellant was properly indicted in the other county of Hamilton, and in one sense this may have been a fault on his part. Still in our view it would constitute, no matter whether he was rightly or wrongly indicted in the other county, a sufficient cause for his exoneration, inasmuch as the very government which held him amenable to the charge in Bosque county, had taken jurisdiction of him in Hamilton county.

*Woods,* 103 S.W. at 896. It is not clear in these cases how the principal came to be incarcerated in the other jurisdiction.

In two other cases the Court focused, in concluding the principal and sureties were entitled to exoneration, on the fact that the principal was turned over by state or local authorities to the authorities of the other jurisdiction. *James v. State,* 413 S.W.2d 111, 112 (Tex.Crim.App.1967); *Jones v. State,* 15 S.W.2d 622 (Tex.Crim.App.1929)(on motion to reinstate appeal). In *Jones,* following entry of a judgment nisi, the appellants, claiming exoneration on the appearance bond due to uncontrollable circumstances, alleged that Jones had been delivered by the sheriff of Hartley County into the custody of federal authorities, that he had been tried and convicted in federal court and was confined in the federal penitentiary on the date the judgment nisi was entered in Hartley County. We agreed the appellants had shown circumstances entitling them to exoneration:

> It was undisputed that the sheriff of Hartley county placed F.J. Jones in the custody of the federal authorities, and that said Jones had been sent to the federal penitentiary prior to the date the judgment nisi was entered, and had been confined in said penitentiary at all times since said date, and that he was confined therein on the date final judgment was entered herein. Hence it would appear that uncontrollable circumstances, brought about by the action of the sheriff of Hartley county in placing F.J. Jones in the custody of the federal authorities, prevented his appearance in

court on the day his appearance bond was forfeited....

*Jones,* 15 S.W.2d at 623. In *James* we relied on *Jones* to reach the same conclusion in a similar fact situation. There, in response to the State's motion for summary judgment, the appellant alleged that on the same day the sheriff of Potter county approved the appearance bond at issue, he delivered the principal to agents of the State of Mississippi pursuant to an extradition warrant. The appellant claimed the principal's failure to appear arose through no fault of his own but was due to the uncontrollable circumstance that he was in the custody of the State of Mississippi from the time he was delivered there for extradition. The State relied upon *Williams* to support its argument that incarceration was not a circumstance that arose through no fault of appellant's, but the Court turned to *Jones* for guidance:

> [In Jones, t]he allegations which were held to afford a basis for the prayer that Jones and his sureties be exonerated from liability were to the effect that prior to the day the judgment nisi was entered the sheriff had delivered the principal, Jones, to the Federal authorities and on the date judgment nisi was entered he was confined in the United State Penitentiary....

We held on the basis of *Jones,* that the appellant's affidavits raised a defense sufficient to defeat the State's motion for summary judgment.[2]

■ Given this fractured state of precedent and the lack of analysis in support of the Court's holdings, we re-examine the issue anew for the purpose of articulating a consistent and workable standard. In doing so, we give the controlling provision a plain language reading. Article 22.13 provides for exoneration if "uncontrollable circumstances" prevented the principal's appearance and it is

shown that the principal's failure to appear arose "through no fault on his part."

The first question is whether incarceration in another country is an "uncontrollable circumstance." A principal incarcerated in another jurisdiction could not appear for trial pursuant to the bond if he wanted to. His circumstances prevent his appearance and he has no control over them. It might be argued that a principal *had* control over his circumstances to the extent that he could have avoided doing the act for which he was incarcerated. But we view the principal's actions prior to the incarceration as going to the "fault" issue. If we look to the principal's actions prior to the incarceration as bearing on the "control" issue, there would be a redundancy in article 22.13 by providing for both "uncontrollable circumstances" and "no fault" on the part of the principal. This reading is consistent with the rest of subsection (3) which provides:

> *The sickness of the principal or* some uncontrollable circumstance which prevented his appearance ...

If a principal is so sick, perhaps even hospitalized, on the date of his scheduled appearance, that he could not appear even if he wanted to, then his circumstances are considered "uncontrollable." However, a principal might nevertheless bear some "fault" in his failure to appear due to illness. For instance, if a principal had attempted suicide and was hospitalized in a coma at the time of the scheduled appearance, his actions leading to the hospitalization might be said to bear on his "fault" in failing to appear. So, we consider whether the circumstances are "uncontrollable" by evaluating them at the time of the scheduled appearance. We look to the principal's actions prior to the scheduled appearance in determining "fault."

---

**2.** In a case that appears to be an aberration, we created an exception when the principal is incarcerated on a misdemeanor charge. *Grantham v. State,* 408 S.W.2d 235 (Tex.Crim.App.1966). In that case, the principal claimed his incarceration in another state was an uncontrollable circumstance entitling him to exoneration. There were no facts alleged as to how the principal came to be imprisoned in the other state. Recognizing that *Williams* held that incarceration could not

be said not to be the fault of the defendant, we declined to apply *Williams:*

> The fact that the charge against the principal Granthum in this state is a misdemeanor which may be prosecuted after the felony sentence in Nebraska has been served, whereas Williams had been convicted in this state of a felony, convinces us that the reasoning of the Williams case should not be applied.

*Grantham,* 408 S.W.2d at 236.

The State argues that while incarceration in another county or state has been held to be an "uncontrollable circumstance", incarceration in a foreign country should be viewed differently because of the lack of consistent and binding extradition treaties between the United States and other countries. The State does not explain why this should be a basis for a distinction and we can articulate no rationale. A principal has no greater or lesser control over his ability to appear due to his incarceration, whether it be another county, another state, or another country. Nothing in the plain language of article 22.13 makes such distinction. The Court of Appeals did not err in holding that incarceration in another country can be an "uncontrollable circumstance" under article 22.13.

■ We turn to the question of fault on the part of the principal. In assessing "fault" the principal's status in the other jurisdiction becomes important—is the principal simply awaiting trial there, or has the principal been convicted and is now serving his sentence? If a principal has been convicted of the crime in the other jurisdiction, the reasoning of *Williams,* supra, makes sense—since the principal's illegal actions led to his incarceration and it is the incarceration that prevents his appearance, it cannot be said that his failure to appear "arose through *no fault* on his part." He certainly bears *some* modicum of fault in his failure to appear by virtue of the fact that his illegal actions led directly to his incarceration, thereby preventing his appearance.

We hesitate to assign "fault," however, for a principal's failure to appear due to an incarceration when the principal has not yet been tried and convicted. This is because an accused is presumed innocent until proven guilty and therefore his alleged actions in committing the crime cannot serve as a basis for finding "fault." The further question is whether other, non-illegal actions, on the part of the principal could serve as a basis for finding fault in his failure to appear. For instance, could it be said that the principal bears some "fault" because he went to the other jurisdiction of his own volition? We think not, assuming there is no condition in the bond that the principal remain in the bonding jurisdiction. The word "fault" implies wrongdoing. "Fault" is defined as "a weakness in character, failing, imperfection, impairment, ... misdemeanor ... mistake ... responsibility for something wrong."[3] THE NEW MERRIAM-WEBSTER DICTIONARY 275 (1989 ed.). In order to find the principal's failure to appear arises from "fault on his part," the principal's actions must be illegal in some respect.[4] Simply traveling outside of the bonding jurisdiction is not illegal activity absent a travel restriction in the bond.

■ With these principles in mind, we turn to the State's second claim that the Court of Appeals erred in holding that the affidavits raised a fact issue sufficient to preclude the State's motion for summary judgment. As the movant for summary judgment the State had the burden of establishing that there were no genuine issues of material fact as to any of the elements of the State's cause of action, which the State proved by the bond and the judgment nisi. *Alvarez v. State,* 861 S.W.2d 878, 887 (Tex.Crim.App.1993)(opinion on reh'g). The burden shifted to Hill to raise a fact issue on the affirmative defense of exoneration. *Id.*

3. Judge Keller says equating "fault" with illegal action "reads something into the statute that is not there." We give "fault" its plain meaning within the context of the provision at issue. Judge Keller gives "fault" a much broader meaning by equating it with causing ·a consequence. This interpretation eliminates any notion of doing something "wrong," which is integral to the meaning of "fault." One does not ask whose "fault" it is when something good happens or when things go right. If we interpret "fault" as simply meaning to cause a consequence, the further question is then how directly must one's actions cause the consequence? Judge Keller does not answer this and ultimately need not entertain this intellectual exercise since under her rule fault is *assumed,* absent delivery by the bonding government. Therefore, simply traveling in another jurisdiction is "fault," even if there was no bond restriction on traveling and even if the principle was wrongly accused and held in the other jurisdiction.

4. While the plain meaning of the word "fault" does· not necessarily connote illegality, we decline to place trial courts in the position of determining· what might be morally "wrong" but not against the law.

at 889 n. 5. The Court of Appeals correctly laid out the proof required in order to prove an affirmative defense under article 22.13(3): the defendant and/or his sureties must show (1) that some uncontrollable circumstance prevented the principal's appearance at court; (2) that the principal's failure to appear arose through no fault on his part; and (3) that the principal appeared before final judgment on the bond to answer the accusation against him or had sufficient cause for not appearing. *Hill,* 920 S.W.2d at 473 (following *Alvarez* ). An affirmative defense will prevent the granting of a summary judgment only if each element of the affirmative defense is raised by competent summary judgment evidence. *Brownlee v. Brownlee,* 665 S.W.2d 111, 112 (Tex.1984). Every reasonable inference from the evidence must be indulged in favor of the non-movant, and any doubts must be resolved in the non-movant's favor. *Alvarez,* 861 S.W.2d at 887.

The affidavits proffered by Hill aver that Vences was incarcerated in Mexico on October 4, 1994, and was there at the time of his scheduled appearance on October 14, 1994. The affidavits allege that this amounted to an uncontrollable circumstance and that Vences' failure to appear arose through no fault on his part. Nothing is stated concerning whether Vences was awaiting trial or had been convicted. We hold the affidavits alleging Vences' imprisonment in Mexico were sufficient to raise evidence on the first element of his affirmative defense, uncontrollable circumstances. In order to raise evidence that his failure to appear arose through no fault on his part in the context of an incarceration in a foreign country, the non-movant must offer some proof that he has not been convicted of the alleged actions that serve as the basis for the incarceration. The affidavits state nothing as to the status of Vences' imprisonment. All that is alleged is that Vences had been incarcerated for ten days at the time of his appearance date, from which no inferences can be drawn given that his case may have been resolved quickly pursuant to a guilty plea, he might have been at large and arrested pursuant to a previous

conviction, or a trial might even be had that quickly on a guilty plea in the Mexican legal system.[5] In the absence of any evidence on the status of the principal's incarceration, no inference can be made to support the element of the affirmative defense that the principal had "no fault" in failing to appear due to his incarceration in a foreign jurisdiction. A bare assertion that his failure to appear was through no fault on his part does not amount to sufficient summary judgment proof in this context.

While we can hardly fault the Court of Appeals for holding as it did in light of the state of precedent before it on this issue, we hold the affidavits were insufficient to raise fact issues under article 22.13(3) and defeat the State's motion for summary judgment. The judgment of the Court of Appeals is reversed and this cause is remanded to the trial court.

McCORMICK, P.J., concurs.

BAIRD, J., dissents believing the Court of Appeals correctly concluded there was a fact issue sufficient to preclude summary judgment in this case. *Hill v. State,* 920 S.W.2d 468 (Tex.App.—Waco 1996).

OVERSTREET, J., dissents.

KELLER, Judge, concurring.

I disagree with the majority insofar as it equates "fault" with "illegal action." Doing so reads something into the statute that is not there. And the issue is not the *morality* of the act that lands the principal in jail. *See* op. at n. 3. A person may cause and be at "fault" for a consequence without having committed an illegal act or an immoral one.

It seems to me that the trend of the cases cited by the majority is, more or less, to hold that: (1) a principal confined in the *same state* is excused from appearing because the "same" government that wants him to appear one place is holding him elsewhere; and (2) a principal confined *out-of-state* is *not* excused from appearing unless he was *delivered* there

---

**5.** While certain inferences might be drawn from dates alone based on an incarceration in this country, absent evidence about the legal system

of the foreign country, inferences are less easily drawn as to incarceration there.

by the government that wants him to appear. Since the government of a foreign country is, for these purposes, equivalent to the government of a foreign state, I would hold that a principal confined in a foreign country is not excused from appearing unless he was delivered there by the same government that wants him to appear.

In this case, there is no evidence that Vences was delivered to Mexican authorities by McLennan County authorities. The affidavits were thus insufficient to defeat the State's motion for summary judgment. I therefore concur in the Court's judgment.