NUMBER 13-99-280-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI


___________________________________________________________________


ROLANDO AND ANDREA REYES
, Appellants,


v.



THE STATE OF TEXAS
, Appellee.

___________________________________________________________________


On appeal from the 135th District Court


of Refugio County, Texas.


____________________________________________________________________


O P I N I O N



Before Justices Hinojosa, Chavez, and Rodriguez


Opinion by Justice Rodriguez


 

 Rolando Reyes and Andrea Reyes appeal a judgment nisi(1) and
subsequent judgment declaring forfeiture of a $25,000.00 bail bond for
which they were a surety. We affirm. 

 Appellants posted an appeal bond for Santos Cuellar in the
amount of $25,000.00 with the Sheriff of Refugio County, Texas on
January 13, 1998.(2) Cuellar was not released from custody; instead, he
was picked up by federal authorities on January 23, 1998 and was
subsequently deported to Mexico. There is no evidence in the record
showing why Cuellar was deported.(3) On December 8, 1998, the trial
court held a hearing pursuant to this Court's order that the trial court
appoint new counsel to represent Cuellar on appeal. Although notice
was sent to appellants, no notice was sent to Cuellar to be present at
the hearing.(4) After Cuellar did not appear at the hearing, the trial court
entered a judgment nisi, declaring forfeiture of the bond. On April 7,
1999, after a hearing, the court entered a final judgment declaring the
bond forfeited. This appeal ensued. 

 By their first issue, appellants contend the trial court erred in
failing to exonerate them from liability because the bond in question
was not a valid and binding undertaking in law. 

 Article 22.13 of the code of criminal procedure provides that a
surety will be exonerated from liability if "the bond is, for any cause, not
a valid and binding undertaking in law." Tex. Code Crim. Proc. Ann. art.
22.13 (3) (Vernon 1989). Furthermore, article 17.29 provides, "[w]hen
the accused has given the required bond, either to the magistrate or the
officer having him in custody, he shall at once be set at liberty." Tex.
Code Crim. Proc. Ann. art. 17.29 (a) (Vernon Supp. 2000). 

 Appellants assert Cuellar was never released from custody and set
at liberty; thus, the bond was not a valid undertaking in law. The
evidence shows a bond was posted for Cuellar on January 13, 1998,
and he was not released to the federal authorities until January 23,
1998. There was testimony that the Immigration and Naturalization
Service ("I.N.S.") placed a detainer(5) on Cuellar and sent it to the Refugio
County Sheriff, and that Cuellar was held in custody in the interim for
the I.N.S. There was also testimony that Rolando Reyes was aware of
the I.N.S. detainer prior to Cuellar being handed over to the I.N.S. on
January 23.(6) 

 Article 17.08 of the code of criminal procedure outlines the
requirements for a bail bond. Tex. Code Crim. Proc. Ann. art. 17.08
(Vernon Supp. 2000). Significantly, it does not require release of the
principal. Release of the principal is discussed in article 17.29, which
directs that the principal is to be set at liberty when the accused has
given the required bond. Tex. Code Crim. Proc. Ann. art. 17.29 (a)
(Vernon Supp. 2000). From a reading of articles 17.08 and 17.29, it
appears that validity of the bond does not depend upon release of the
principal; rather, validity of the bond must be established in order to
secure release of the principal. 

 Bail bonds are contracts between the surety and the State. Morin
v. State, 770 S.W.2d 599, 599 (Tex. App.--Houston [14th Dist.] 1989),
pet. dism'd per curiam, 800 S.W.2d 552 (Tex. Crim. App. 1990); Keith
v. State, 760 S.W.2d 746, 747 (Tex. App.--Fort Worth 1988), aff'd, 802
S.W.2d 690 (Tex. Crim. App. 1990). "A 'bail bond' is a written
undertaking entered into by the defendant and his sureties for the
appearance of the principal therein before some court or magistrate to
answer a criminal accusation. . . ." Tex. Code Crim. Proc. Ann. art.
17.02 (Vernon 1977) (emphasis added). The contract consists of a
promise by the surety that the principal will appear before the court in
exchange for a promise by the State that it will release the principal. 
Appearance of the principal before the court and release of the principal
by the State relate to performance of the bond, rather than to its
validity. The legislature has provided sureties with a remedy for
instances in which the principal cannot be released because he is being
held in the custody of another jurisdiction. Article 17.16 provides that
"A surety may before forfeiture relieve himself of his undertaking by . .
. delivering to the sheriff of the county where the prosecution is pending
an affidavit stating that the accused is incarcerated in federal custody,
in the custody of any state, or in any county of this state." Tex. Code
Crim. Proc. Ann. art. 17.16 (a)(2) (Vernon Supp. 2000). Appellants, in
this case, elected not to pursue relief under article 17.16. Nonetheless,
the bond complied with article 17.08 and was a valid and binding
undertaking at law. Appellants' first issue is overruled.

 In their second issue, appellants claim the trial court erred in
failing to exonerate them from liability because Cuellar's failure to
appear was an uncontrollable circumstance that arose from no fault on
his part. Article 22.13 provides exoneration for a surety if some
"uncontrollable circumstance" that arose through no fault of the
principal prevented his appearance at court. Tex. Code Crim. Proc. Ann.
art. 23.13 (3) (Vernon 1989). 

 The court of criminal appeals has held that a principal's
incarceration in another state or country is an uncontrollable situation
for purposes of article 23.13(3). Hill v. State, 955 S.W.2d 96, 99-100
(Tex. Crim. App. 1997). As the court explained, "[a] principal
incarcerated in another jurisdiction could not appear for trial pursuant
to the bond if he wanted to." Id. at 99. Similarly, we conclude a
principal's deportation from the United States is an uncontrollable
situation, as he may not legally reenter the country to appear before a
court. 

 Appellants must still, however, show the circumstances arose
through no fault of the principal. Tex. Code Crim. Proc. Ann. art. 23.13
(3) (Vernon 1989). The Hill court examined the "fault" requirement in
the context of the principal being incarcerated in another jurisdiction. 
See Hill, 955 S.W.2d at 99-101. The court commented:

 In assessing "fault" the principal's status in the
other jurisdiction becomes important­is the
principal simply awaiting trial there, or has the
principal been convicted and is now serving his
sentence? If a principal has been convicted of the
crime in the other jurisdiction, the reasoning of
Williams, supra, makes sense­ since the
principal's illegal actions led to his incarceration
and it is the incarceration that prevents his
appearance, it cannot be said that his failure to
appear "arose through no fault on his part." He
certainly bears some modicum of fault in his
failure to appear by virtue of the fact that his
illegal actions led directly to his incarceration,
thereby preventing his appearance. 


Id. (emphasis in original). The court further explained, in the context of
a summary judgment, that "[i]n order to raise evidence that his failure
to appear arose through no fault on his part in the context of an
incarceration in a foreign country, the non-movant must offer some
proof that he has not been convicted of the alleged actions that serve
as the basis for the incarceration." Id. 

 In this case, the uncontrollable circumstance is deportation rather
than incarceration in another jurisdiction; nonetheless, we are guided
by the court's analysis. We must determine whether Cuellar's
deportation, which prevented him from appearing before the court,
arose from no fault on his part. Here, there is no evidence of why the
I.N.S. took custody of Cuellar and why he was subsequently deported. 
Appellants have failed to make an adequate showing of no fault under
article 23.13(3). Because appellants did not establish that Cuellar's
failure to appear was due to an uncontrollable circumstance that arose
from no fault on his part, the trial court did not err in refusing to
exonerate appellants from liability under the bond. Appellants' second
issue is overruled. 

 The judgment nisi and the subsequent judgment declaring
forfeiture are AFFIRMED. 

 NELDA V. RODRIGUEZ

 Justice


Publish. Tex. R. App. P. 47.3.

Opinion delivered and filed this the 21st day of September.


 

1. The literal meaning of "judgment nisi" is "judgment unless." Bob
Smith Bail Bonds, Sur. v. State, 963 S.W.2d 555, 556 (Tex. App.--Fort
Worth 1998, no pet.). It denotes a judgment that will stand unless the
"party affected by it shall appear and show cause against it. . . ." See
Black's Law Dictionary 944 (5th ed. 1979). 
2. There was some dispute at the hearing on the judgment nisi as
to when the appeal bond was filed. The appeal bond itself is stamped
filed January 23, 1998, but indicates it was filed and signed by the
judge on January 13, 1998. The judgment nisi recites that appellants
entered into the bond on January 13, 1998. In their briefs, both parties
agree the bond was posted on January 13, 1998. Accordingly, we treat
the appeal bond as entered on January 13, 1998. See Tex. R. App. P.
38.1(f).
3. Rolando Reyes testified Cuellar was not an illegal alien and that
he had a green card.
4. Under article 22.05 of the code of criminal procedure, the principal
is not entitled to notice "unless he has furnished his address on the
bond, in which event notice to the defendant [principal] shall be
deposited in the United States mail directed to the defendant at the
address shown on the bond." Tex. Code Crim. Proc. Ann. art. 22.05
(Vernon 1989); see Rodriguez v. State, 990 S.W.2d 438, 441 (Tex.
App.--El Paso 1999, no pet.) (noting "[f]ormal service of citation on the
principal is clearly not contemplated by article 22.05"). 
5. A document entitled, "Immigration Detainer-Notice of Action"
appears in the reporter's record. It is addressed to the Refugio County's
Sheriff and advises that an investigation has been initiated to determine
whether Cuellar is subject to removal from the United States. It
requests that the Sheriff's office notify the I.N.S. of Cuellar's time of
release at least thirty days prior to the release. The document is dated
November 16, 1997.
6. There was conflicting testimony as to whether Reyes was aware
that the I.N.S. had a detainer out for Cuellar when he posted bond or
before Cuellar was released to the federal authorities. According to
Rolando Reyes, Cuellar never informed him of any problems with the
I.N.S, and if he had, Reyes probably would have never bailed him out. 
Reyes testified, "after a few days, two or three days, this is when we
find out about it with I.N.S. The man stayed there ten days or longer
before they picked him up. But I wasn't aware until about two or three
days later. If I was aware before that I would have never released him,
I would have never bailed him out." However, Reyes also stated that
he called the jailhouse one time to inquire why Cuellar was still being
held. He was informed that Cuellar was being held for the I.N.S. 
Robert L. Vega, an assistant jail administrator for Refugio County
Sheriff's Department, testified he advised Mr. and Mrs. Reyes that
Cuellar had an I.N.S. detainer prior to their making bond, and that he
explained that Cuellar would not be released by the bond.