ALLEGHENY CASUALTY CO. (Agent Alberto J. De La Chica, Jr. d/b/a La Chica II Bail Bonds), Appellant,

v.

The STATE of Texas, Appellee.

No. 08–03–00226–CV.

Court of Appeals of Texas, El Paso.

April 7, 2005.

Rehearing Overruled May 4, 2005.

Louis Elias Lopez, Attorney At Law, El Paso, for Appellant.

Jose R. Rodriguez, County Atty., El Paso, for Appellee.

Before Panel No. 4 BARAJAS, C.J., LARSEN, and McCLURE, JJ.

## OPINION

RICHARD BARAJAS, Chief Justice.

This is an appeal from the trial court's entry of a final judgment finding a bond forfeiture in which Appellee was granted final forfeiture of a bail bond of $1,500 against Appellant. For the reasons stated herein, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The substantive facts in this case are not disputed. The criminal defendant-principal Jorge Rios Renteria, a citizen of Mexico, applied for admission to the United States on February 24, 2002 as a non-immigrant visitor. At that time, he was found to be smuggling approximately forty-six pounds of marijuana into the United States. He was paroled[1] into the United States for prosecution proceedings related to the smuggling. He was indicted by the State of Texas on March 19, 2002 and charged with the felony of possession of marijuana in the quantity of more than five pounds but less than fifty pounds. The principal, Jorge Renteria, secured an appearance bond in the amount of $1,500 on March 1, 2002 with Appellant as surety. The effect of the issuance of the bond is that the principal is authorized by law to be released by the Sheriff. Because the principal in this case is a Mexican national who had been paroled into the United States for a temporary purpose, the Immigration and Naturalization Service (INS) had filed a detainer with the Sheriff which provided that upon release from incarceration, the individual would be released to the INS and taken to an INS facility for holding until his return to Mexico. In conjunction with his parole into the United States for the criminal prosecution, the Honorable Gary Burkholder, immigration judge, issued an Order of Removal providing for removal from the United States to Mexico for the reason that the immigration officer believed him to be a trafficker of controlled substances. The issuance of a bond triggered his release to INS and subsequent removal from the United States.

On May 8, 2002, the principal failed to appear at his hearing to answer the felony drug possession charges pending against him. On May 13, 2002, the trial court issued a Judgment *Nisi.* A hearing on the

---

1. Under federal law, an alien may be admitted to the United States for a temporary period, as determined on a on a case-by-case basis, for humanitarian reasons or for the public benefit. This action is referred to as a "parole" into the country. *See* 8 USC § 1182(d)(5)(A) (1999).

Judgment *Nisi* was held on March 6, 2003, the trial court received evidence from both the Appellant and the Appellee and reviewed the exhibits and trial briefs filed by both parties. On March 26, 2003, the trial court issued an order stating "[t]he case will be held in abatement until April 9, 2003 at 5 pm to produce Mr. Renteria by use of 'parol' [sic] or other method." A Final Order on Judgment *Nisi* was entered on April 16, 2003 finding that the bond of $1,500 should be forfeited. Appellant did not request findings of fact or conclusions of law.

## II. *ISSUES PRESENTED*

In two issues for review, Appellant challenges the court's granting of the bond forfeiture claiming that a bail bond surety is not liable for a bail bond when the principal is deported [2] prior to the time that the principal is to appear in court. Appellant's second issue asserts that liability of a bonding company for a bond forfeiture is excused by a finding of uncontrollable circumstances and that the fact of federal deportation is sufficient for a finding of excuse under Texas Code of Criminal Procedure Article 22.13. We read these issues as a challenge to the sufficiency of the evidence to support the trial court's non-finding of deportation of the principal as a defense to a bond forfeiture case as a matter of law. Similarly, we construe both issues as attacking the trial court's non-finding of uncontrollable circumstances as an affirmative defense to the bond forfeiture liability for the reason

that the principal had been deported as a matter of law.

## III. *STANDARD OF REVIEW*

██ A "no evidence" or legal insufficiency point is a question of law which challenges the legal sufficiency of the evidence to support a particular fact finding. There are two separate "no evidence" claims. When the party having the burden of proof suffers an unfavorable finding,[3] the point of error challenging the legal sufficiency of the evidence should be that the fact or issue was established as "a matter of law." When the party without the burden of proof suffers an unfavorable finding, the challenge on appeal is one of "no evidence to support the finding." *In re Estate of Livingston,* 999 S.W.2d 874, 879 (Tex.App.-El Paso 1999, no pet.); *see Creative Manufacturing, Inc. v. Unik, Inc.,* 726 S.W.2d 207, 210 (Tex.App.-Fort Worth 1987, writ ref'd n.r.e.).

██ When attacking the legal sufficiency of the evidence to support an adverse finding on an issue for which he had the burden of proof, i.e., challenging the trial court's finding as a matter of law, the appellant must demonstrate on appeal that the evidence conclusively established all the vital facts in support of the issue. *In re Estate of Livingston,* 999 S.W.2d at 879; *Sterner v. Marathon Oil Company,* 767 S.W.2d 686, 690 (Tex.1989); *Kratz v. Exxon Corp.,* 890 S.W.2d 899, 902 (Tex.App.-El Paso 1994, no writ); *Chandler v. Chandler,* 842 S.W.2d 829, 832 (Tex.App.-El Paso 1992, writ denied). A party attempting to

---

**2.** Though the record reflects that Mr. Renteria was in fact removed from the United States which is legally distinguishable from deportation, Appellant refers to Mr. Renteria as having been deported. For purposes of this appeal, the term used is irrelevant because the net effect of the proceedings is that Mr. Renteria is no longer in the United States.

We note, however, there is no evidence in the record to indicate that Mr. Renteria is incarcerated in Mexico only that he was removed by the INS, suggesting that he is no longer in the United States.

**3.** This is sometimes referred to as a "failure to find" or a "non-finding."

overcome an adverse fact finding as a matter of law must surmount two hurdles. *In re Estate of Livingston,* 999 S.W.2d at 879; *Sterner,* 767 S.W.2d at 690. First, the record must be examined for evidence that supports the finding, while ignoring all evidence to the contrary. *In re Estate of Livingston,* 999 S.W.2d at 879; *Sterner,* 767 S.W.2d at 690; *Kratz,* 890 S.W.2d at 902. Second, if there is no evidence to support the finding, then the entire record must be examined to see if the contrary proposition is established as a matter of law. *In re Estate of Livingston,* 999 S.W.2d at 879; *Sterner,* 767 S.W.2d at 690; *Kratz,* 890 S.W.2d at 902. Only if the contrary position is conclusively established will the point of error be sustained. *In re Estate of Livingston,* 999 S.W.2d at 879–80; *Kratz,* 890 S.W.2d at 902; *Chandler,* 842 S.W.2d at 832.

In reviewing a factual sufficiency *point of error,* the appeals court must weigh all of the evidence in the record. *Ortiz v. Jones,* 917 S.W.2d 770, 772 (Tex. 1996). Findings of fact may be overturned only if they are so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *Id.* In that event, the appeals court must state clearly why the finding is factually insufficient or so against the great weight and preponderance as to be manifestly unjust. *Id.*

An "insufficiency" point invokes a broader standard, requiring this Court to consider all of the evidence and ascertain whether the evidence supporting the finding is so weak, or the evidence to the contrary so overwhelming, that the finding should be set aside and a new trial ordered. *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.1965).

Legal and factual sufficiency of the evidence standards of review govern appeals of nonjury trials on the merits.

*IKB Industries (Nigeria) Ltd. v. Pro–Line Corp.,* 938 S.W.2d 440, 445 (Tex.1997); *Chrysler Corp. v. Blackmon,* 841 S.W.2d 844, 852 (Tex.1992); Hall, *Standards of Appellate Review in Civil Appeals,* 21 St. Mary's L.j. 865, 919–20 (1990). When a party appeals from a nonjury trial, it must complain of specific findings and conclusions of the trial court, because a general complaint against the trial court's judgment does not present a justiciable question. *Fiduciary Mortgage Co. v. City Nat'l Bank,* 762 S.W.2d 196, 204 (Tex. App.-Dallas 1988, writ denied). Accordingly, findings of fact and conclusions of law are mandatory for a party to file to avoid the onerous presumptions that apply in an appeal from a nonjury trial. When an appellant does not request or file findings and conclusions by the trial court, the appellate court presumes the trial court found all fact questions in support of its judgment, and the reviewing court must affirm that judgment on any legal theory finding support in the pleadings and evidence. *Point Lookout West, Inc. v. Whorton,* 742 S.W.2d 277, 278 (Tex.1987).

If the appellant does not challenge the trial court's findings of fact, when filed, these facts are binding upon both the party and the appellate court. *Wade v. Anderson,* 602 S.W.2d 347, 349 (Tex.Civ.App.-Beaumont 1980, writ ref'd n.r.e.). Accordingly, it is incumbent for the appellant to attack the findings by appropriate legal and factual sufficiency points of error. *Lovejoy v. Lillie,* 569 S.W.2d 501, 504 (Tex.Civ.App.-Tyler 1978, writ ref'd n.r.e.). In an appeal of a nonjury trial, findings are specifically and meaningfully tied to appropriate standards of appellate review and are therefore truly beneficial to appellate review. *See Blackmon,* 841 S.W.2d at 853.

It would have been helpful for the court to have articulated its findings of facts and

conclusions of law but because no findings of fact or conclusions of law were requested or filed in this case, we will presume that the trial court found all necessary facts to support the judgment.

## IV. DISCUSSION

After the principal on the bond failed to appear, the State initiated the proceedings to forfeit the bail bond that had been posted in this case. The evidence is undisputed that the principal failed to appear at the required time and has not appeared to answer the felony possession of marijuana charges pending against him. The question raised by Appellant is merely whether the fact of deportation of an alien from the United States automatically triggers a defense to the obligation imposed by the writing of the bond and whether the fact of deportation is an uncontrollable circumstance that excuses nonappearance at a court proceeding.

In *Castaneda v. State*,[4] the Court of Criminal Appeals addressed the issue of the liability of a bonding company under Texas Code of Criminal Procedure Article 17.16 and outlines the procedure that is necessary for a bonding company to raise a defense to liability on the bond. *Castaneda* involved a contention on the part of the bonding company that it was excused from liability under the bond in five cases where individuals had been released to the custody of INS. Significantly, in three of the five cases, the bonding company had complied with the statute and provided proof in the form of verification from the sheriff that the individuals were in the custody of the federal agency. The *Castaneda* court held that such proof was sufficient to meet the requirements of the statute and the bonding company was excused under those circumstances. The fourth case involved a technical release of

the surety on other grounds not relevant to our case. The fifth case was factually distinguishable because the bonding company did not submit proof of compliance with the statute in the form of the verification of incarceration from the sheriff and the surety was not released. *See generally Castaneda v. State*, 138 S.W.3d 304 (Tex.Crim.App.2003). The Court of Criminal Appeals notes that the statutory provision does not provide for "absolving liability where a principal is deported from the United States but is not shown to be in the custody of the foreign jurisdiction, . . ." *id.* at 309, but does not reach the merits on the question of deportation as a defense because of the lack of evidence of the fact of deportation in the Castaneda record. *Id.* Significantly, the Court of Criminal Appeals does not discuss the option of "parole" available to deported aliens who wish to return.

Interestingly, the fact situation presented in the case before us appears to mirror the factual scenario contemplated by the *Castaneda* dissent. The *Castaneda* dissent describes an opportunity for nefarious drug dealers to take advantage of the release provision provided by the bond, allowing the drug "mules" to avoid prosecution and return to Mexico with virtually no consequences other than a small inconvenience and slight disruption to the drug trafficker's supply train. *See Castaneda*, 138 S.W.3d at 314. In *Castaneda*, the court described a scenario which fits our situation almost exactly. Mr. Renteria, carrying less than fifty pounds of marijuana, presented himself for entry to the United States as a tourist. When caught smuggling the drugs, and because the amount in question did not appear to be significant enough to warrant federal prosecution, he was turned over to the State

4. *Castaneda v. State*, 138 S.W.3d 304 (Tex. Crim.App.2003).

for prosecution of the felony under state law. The Federal government's interest in him was limited to the immigration violation which triggered the immigration hold. Because the felony charge resulted in a relatively small bond, with a correspondingly smaller bonding fee, Mr. Renteria was able to obtain the services of a bonding company who was willing to write a bond for an individual who listed only a minimal address in Juarez, Mexico for purposes of identification. The result was that the bond triggered Mr. Renteria's release to INS which then transferred him to the border where he has disappeared into Mexico. Now Appellant would like this Court to excuse it from its minimal obligation under the bond entirely, allowing it to make a tidy profit on a scheme which is obvious to all but the most naive.

 Appellant has asserted that the mere fact of the deportation of the principal triggers a judicial excuse to their obligation under the bond because of Texas Code of Criminal Procedure Article 17.16. We strongly disagree and look to the Court of Criminal Appeals' opinion in *Castaneda* for guidance.

 The surrender of a surety bond is covered by Article 17.16 of the Code of Criminal Procedure [5] which states;

### Discharge of liability; surrender or incarceration of principal before forfeiture

(a) A surety may before forfeiture relieve himself of his undertaking by:

(1) surrendering the accused into the custody of the sheriff of the county where the prosecution is pending; or

(2) delivering to the sheriff of the county where the prosecution is pending an affidavit stating that the accused is incarcerated in federal custody, in the custody of any state, or in any county of this state.

(b) For the purposes of Subsection (a)(2) of this article, the bond is discharged and the surety is absolved of liability on the bond on the sheriff's verification of the incarceration of the accused.

In addressing a factually similar situation, the *Castaneda* court interpreted the requirements established by Article 17.16. By its plain language, Article 17.16 releases a surety from liability on a bond when verification of the principal's incarceration in another jurisdiction is requested and the sheriff is able to verify that incarceration. When incarceration in the receiving jurisdiction is verified, the surety is automatically released from liability; neither further action by the surety nor approval by a court is required. There is no requirement that the surety notify the trial court, or anyone else, that the bond has been surrendered or to request that a detainer or arrest warrant be entered so that. the principal is subject to return to the sending jurisdiction. *Castaneda,* 138 S.W.3d at 308.

In *Castaneda,* as in our case, the other jurisdiction was federal. In the *Castaneda* cases, the court noted that the bonding company was hired to post bond so that the principals would be transferred to federal custody. After the bonds were posted and his principals transferred into INS custody, the bonding company filed, for three of the principals, the forms requesting verification by the Hidalgo County sheriff. In these three cases, the sheriff verified that the principal was in INS custody and provided a verification form. In these three cases, the bonding company then filed an Affidavit of Bondsman for Surrender of Principal, with the verification form attached, and requested the trial

---

**5.** Tex.Code Crim. Proc. Ann. art. 17.16 (Vernon 2005).

judge to issue a warrant for the arrest of the principal. Such requests are not required to release the surety from liability under the plain language of Article 17.16, but appear to have been a courtesy notification to the trial court that the principal was no longer in the custody of Hidalgo County. In each case, however, the trial court refused to issue the warrant. *Id.*

In due course, each case was called for trial, and in each case, the principal failed to appear. Even though, by operation of law, the bonding company had been released from liability on the three bonds, the State requested, and the trial court granted, a judgment *nisi* against the bonding company and each principal. The *Castaneda* court held that because the bonding company's liability on those three bonds had been exonerated "on the sheriff's verification of the incarceration of the accused," the trial court was without authority to find the bonding company liable for those bonds. *Castaneda,* 138 S.W.3d at 308.

Our case, though similar, is factually distinguishable on two significant grounds. First, the Appellant did not show that the principal was incarcerated in another jurisdiction and did not have the sheriff's verification of such incarceration triggering the automatic release from liability under the statute. In fact, there is no evidence in the appellate record that Mr. Renteria, though in the custody of the INS for a short time, was in the custody of any jurisdiction at the time for appearance in the Texas state courts. Further, Appellant did not present an affidavit of bondsman for surrender of the principal which would have triggered the requirement for verification by the sheriff under Article 17.16. Clearly the statute contemplates excusing a bondsman from liability on the bond when an individual is securely confined in another jurisdiction. It intends to relieve the bondsman of any responsibility for the principal's location or required appearance to answer pending charges only upon verification of the incarceration by the sheriff. It should not, however, be construed as allowing a bonding company to become a participant in a game of cat and mouse where the State is the loser. In sum, Appellant did not show that Mr. Renteria was securely in the custody of any other jurisdiction nor did Appellant comply with the minimal statutory requirements outlined by Article 17.16 to trigger a verification by the sheriff. Because there is no evidence of compliance with the statute, we overrule Appellant's Issue No. One and hold that the mere deportation of an individual without more is not sufficient to trigger a release from liability on the part of a bondsman under Texas Code of Criminal Procedure Article 17.16 as a matter of law.

Appellant has also urged that the deportation of the principal in this case is an uncontrollable circumstance which prevented the appearance of the principal and should result in a mandatory release of liability under Texas Code of Criminal Procedure Article 22.13.

*Castaneda* is also helpful in reviewing this issue by holding that the principal must appear before final judgment on the bond to answer the accusation against him or show sufficient cause for not so appearing. In *Castaneda,* the surety was held liable on the bond for failing to show the circumstances which justified the defense of "uncontrollable circumstance" before the final judgment on the bond was entered because the bondsman had not proved that the principal was in fact deported to Mexico. In our case, it is clear from the record that the principal was returned to Mexico, Appellant urges that the mere fact of the principal's departure from the United States is sufficient to

show as a matter of law that the bonding company is excused from liability on the bond by reason of "uncontrollable circumstance" as contemplated by Article 22.13. *See Castaneda,* 138 S.W.3d at 310. We hold that it does not.

The plain language of Article 22.13 provides for exoneration for responsibility for the bond under limited circumstances. Article 22.13 provides for exoneration if "uncontrollable circumstance" prevented the principal's appearance and it is shown that the principal's failure to appear arose through "no fault on his part." Tex.Code Crim. Proc. Ann. art. 22.13(a)3 (Vernon Supp.2004–05).

Cases that have addressed the issue of "uncontrollable circumstance" appear to consider the "fault" of the principal as having a significant bearing on the ultimate determination of whether the "uncontrollable circumstance" truly excused the principal's failure to appear. *See, e.g., Hill v. State,* 955 S.W.2d 96, 99–100 (Tex.Crim. App.1997). None of the cases that have reviewed this issue before, contemplated the unique factual twist presented by the evidence in this case which included the option of temporary parole being available to a defendant-principal to allow the individual to return to the United States for the purpose of answering the pending criminal charges against him or her.

The trial court was presented with the deposition testimony of Ronald Marcell, a senior immigration inspector with the Immigration and Naturalization Service in El Paso, Texas. Mr. Marcell provided detailed testimony about the option of parole, and appropriate procedure to be followed by an individual who has the desire to return to the United States to answer criminal charges pending against him or her. Further, Appellant's representative,

Mr. Alberto J. De La Chica, Jr. testified that he was familiar with and had, in fact, participated in circumstances whereby individuals from Mexico returned to the United States and were paroled into this country for the limited purpose of appearing at a court proceeding. Mr. De La Chica confirmed that he personally had assisted individuals by meeting individuals at the bridge and facilitating the individual's request for parole.

The evidence also established that in the event parole was denied, the denial may be appealed for further review. Mr. Marcell also testified that his records did not reflect a request for parole by Mr. Renteria ever occurred nor did Appellant contend that Mr. Renteria had presented himself to INS and been denied parole. Rather, what occurred in this case is precisely the type of machinations contemplated by the *Castaneda* dissent.

We note that federal law provides for parole of individuals into the United States for purposes of appearing at court proceedings.[6] Because there is no evidence to reflect that Mr. Renteria attempted to present himself for parole and avail himself of the opportunity to return and answer the charges against him, we hold that Appellant has not shown uncontrollable circumstances to justify exoneration from liability on the bond as a matter of law. We also note that the burden to justify exoneration from liability on a bond should be high and is on Appellant in order to discourage the outrageous consequences of creating a virtual swinging door to allow drug dealers a rapid return to Mexico with essentially no consequences and no corresponding deterrent effect or compulsion to insure the principal's appearance to answer pending charges. The bonding companies should have some incentive to in-

---

**6.** *See* 8 USC § 1182(d)(5)(A) (1999).

sure that there is a meaningful intention to produce an alien defendant for appearance at court proceedings after a bond has been approved.

 The Court of Criminal Appeals in *Hill* discussed the exoneration of responsibility contemplated by "uncontrollable circumstance" of Article 22.13 and the contributing impact of the principal's actions in determining "fault." Clearly, the court contemplates that the principal's conduct is a significant factor and cannot be disregarded when analyzing the situation nor should the statute be liberally interpreted to encourage excusing the principal upon a failure to appear. *See generally Hill v. State,* 955 S.W.2d 96 (Tex.Crim.App.1997). The principal and the bonding company both have a responsibility to insure that the principal appears to answer the charges pending against the principal. When the principal does not appear, the "uncontrollable circumstance" truly should be "uncontrollable," and there should be no fault on the part of the principal. Here, the fact of parole as an available alternative negates any argument of lack of fault on the principal particularly where there is no showing that the principal attempted to avail himself of the opportunity. We therefore overrule Appellant's Issue No. Two in its entirety.

Having overruled each of Appellant's issues on review, we affirm the judgment of the trial court.

LARSEN, J., not participating.