

# Fourth Court of Appeals
## San Antonio, Texas

## CONCURRING OPINION

No. 04-23-00538-CR

**IN RE** Juan Jose **SANTIAGO VILLALOBOS**, et al.

Original Proceeding[1]

PER CURIAM
Concurring opinion by: Rebeca C. Martinez, Chief Justice

Sitting:      Rebeca C. Martinez, Chief Justice
              Luz Elena D. Chapa, Justice
              Irene Rios, Justice

Delivered and Filed: July 26, 2023

I concur in the order denying mandamus relief because, on this record, relators have not met the demanding standard to be entitled to mandamus relief. *See In re City of Lubbock*, 666 S.W.3d 546, 553–54 (Tex. Crim. App. 2023). I write separately to encourage the timely resolution of the underlying cases and the many other Operation Lone Star cases pending in the trial court.

Operation Lone Star has resulted in thousands of unresolved misdemeanor prosecutions in border counties across the state. *See In re Smith*, 665 S.W.3d 449, 452 (Tex. Crim. App. 2022). The typical fact pattern is the arrest of a foreign national for criminal trespass by Texas law enforcement; indictment of the individual in state court for the offense of trespass; the posting of bond; release from state custody into federal custody; and the removal of the individual from the

---

[1] This proceeding arises out of Cause No. 31577, styled *State of Texas v. Juan Jose Santiago Villalobos*, and Cause No. 31941, styled *State of Texas v. Alexandra Lizeth Ayala Ortega*, pending in the County Court, Maverick County, Texas, the Honorable Susan D. Reed presiding.

United States by federal immigration authorities. What remains after removal, is a pending criminal charge in state court but a defendant who is outside of the country and without current federal authorization to return.

Recognizing the difficulty of maintaining proceedings under these circumstances, the Texas Supreme Court has allowed for remote participation "in any hearing, deposition, or other proceeding of any kind" for individuals charged or arrested under Operation Lone Star. *See* RENEWED EMERGENCY ORDER REGARDING INDIGENT DEFENSE AND THE BORDER SECURITY STATE OF DISASTER, Misc. Dkt. No. 23-9025, at § 5 (Tex. Apr. 28, 2023).[2] Relators, by their motions for continuance, ask for just such an accommodation. Each prays for the continuance of an in-person pretrial setting "until a later date so that the Defendant may not be forced to commit an illegal act, *or that [he/she] be allowed to attend court via zoom*." (Emphasis added.) The trial court denied relators' requested accommodation, and its denials are the subject of this mandamus proceeding. Relators complain that if they are ordered to appear in-person while they are not currently authorized to be in the country, they will face the probability of entry of a judgment nisi, issuance of a capias, and ultimately bond forfeiture.

Although the mandamus record is sparse, it appears uncontested that relators fall within the typical fact pattern described above. If so, their zoom appearances at the pretrial hearing would facilitate the timely dispositions of their criminal proceedings, which otherwise could not proceed at this time. However, if the trial court were to allow pretrial appearances by videoconference, trials nevertheless appear unlikely in the foreseeable future. The record does not show that relators have waived their physical presences at trial, and records from other Operation Lone Star appeals

---

[2] The supreme court's April 28, 2023 order was operable at all relevant times. That order expired on July 1, 2023, and was replaced by a renewed order with the same provision. *See* RENEWED EMERGENCY ORDER REGARDING INDIGENT DEFENSE AND THE BORDER SECURITY STATE OF DISASTER, Misc. Dkt. No. 23-9039, at § 5 (Tex. June 30, 2023).

suggest they will not. *Cf. Lira v. State*, 666 S.W.3d 498, 511–12 (Tex. Crim. App. 2023) ("[W]ithin the scope of the right of confrontation is the absolute requirement that a criminal defendant who is threatened with loss of liberty be physically present at all phases of proceedings against him, absent a waiver of that right through defendant's own conduct.") (quoting *Miller v. State*, 692 S.W.2d 88, 91 (Tex. Crim. App. 1985)).

In this context, perhaps the trial court intended to compel relators' in-person pretrial appearances to better ensure relators' presences at trial. The purpose of a bond is to ensure a defendant's presence at trial, and the trial court may have wished to create a possibility of bond forfeiture unless relators somehow managed to appear in person. *See Pharris v. State*, 165 S.W.3d 681, 691 (Tex. Crim. App. 2005); *Ex parte Garcia*, No. 05-02-01542-CR, 2002 WL 31546123, at *2 (Tex. App.—Dallas Nov. 18, 2002, no pet.) (not designated for publication). Conceivably, under the right circumstances, threat of bond forfeiture could be effective to ensure the presence of a removed individual — or, at least, result in the imposition of reasonable consequences for failure to appear. For example, in *Allegheny Casualty Company v. State*, the Eighth Court of Appeals affirmed a judgment against a bond surety after finding bond forfeiture and despite the deportation of the criminal defendant-principal, reasoning:

> [T]he burden to justify exoneration from liability on a bond should be high and is on [the surety] in order to discourage the outrageous consequences of creating a virtual swinging door to allow drug dealers a rapid return to Mexico with essentially no consequences and no corresponding deterrent effect or compulsion to [e]nsure the principal's appearance to answer pending charges.

163 S.W.3d 220, 228 (Tex. App.—El Paso 2005, no pet.).

But circumstances are different here. In *Allegheny Casualty* there was no showing that the criminal defendant-principal attempted to avail himself of the opportunity for parole. *See id.* at 229. Here, the record indicates that relators are making bona fide attempts to ensure their physical presences at trial through parole. In the motions for continuance, relators direct the State to federal

procedures for submitting a parole request, so that a removed defendant may receive federal authorization to enter the country to attend trial. In a related mandamus proceeding, Cause No. 04-23-00539-CR, the three relators filed, in the trial court, an "Assertion of Right to Speedy Trial and Petition for Parole Request to Federal Immigration Enforcement." In their filing, each relator "petitions Maverick County to submit a parole request to Federal Immigration and Customs Enforcement to enter the country and attend [his/her] in-person jury proceeding." Further, each relator, "in line with th[e] request, agrees to assist Maverick County in any way possible to ensure their . . . [p]arole application is processed efficiently." According to relators in both mandamuses, the trial court ordered in-person pretrial appearances after "hearing of" the parole requests.

While I agree that, on this record, relators have not met the high standard for mandamus relief, I am concerned that trial court proceedings will come to a halt if the trial court requires in-person pretrial proceedings and that, under the circumstances, bond and the threat of bond forfeiture will not serve their purpose to ensure relators' physical presences. Therefore, I encourage the State and the trial court, as a state actor, (1) to recognize the apparent difficulties relators face in bringing their persons before the court as well as the efforts they have attempted and are attempting to appear before the trial court by videoconference and pursuant to parole, and (2) to take all appropriate steps to ensure that relators are afforded speedy trials under these circumstances unique to Operation Lone Star but common to thousands of pending cases. *See United States v. Loud Hawk*, 474 U.S. 302, 315 (1986); *Barker v. Wingo*, 407 U.S. 514, 515 (1972); *Ruffin v. State*, 663 S.E.2d 189, 199 (Ga. 2008).

Rebeca C. Martinez, Chief Justice

DO NOT PUBLISH